**OHIO CASUALTY INSURANCE COMPANY, INC. Appellee,**

v.

**LAWSON, Appellant.\***

[Cite as *Ohio Cas. Ins. Co., Inc. v. Lawson* (1993), 91 Ohio App.3d 83.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005458.

Decided Oct. 6, 1993.

---

\* Reporter's Note: A motion to certify the record to the Supreme Court of Ohio was overruled in (1994), 68 Ohio St.3d 1447, 626 N.E.2d 688.

*Julius R. Gerlack,* for appellee.

*Christopher D. Kuebler,* for appellant.

DICKINSON, Judge.

Defendant David M. Lawson has appealed from an order of the Lorain County Court of Common Pleas which granted summary judgment in favor of plaintiff Ohio Casualty Insurance Company, Inc. ("Ohio Casualty") and declared that Lawson was not entitled to a defense or to indemnity pursuant to a certain liability insurance policy. He has argued that the trial court incorrectly determined that the policy at issue was not ambiguous and that it did not require Ohio Casualty to defend and indemnify him under the facts of this case. We affirm the judgment of the trial court because the policy at issue was not ambiguous and did not require Ohio Casualty to defend and indemnify Lawson.

I

Lawson and his spouse, Dianne Lawson, were the owners of a residence located at 752 Infirmary Road, Elyria, Ohio. They held that residence as rental property. The insurance policy at issue in this case, Policy No. DDO 10188610, afforded property coverage for the Infirmary Road residence and, in addition, provided certain liability coverage. The issue in this case involves the extent of the liability coverage provided under the policy.

On June 16, 1990, Mrs. Lawson was seriously injured in a boat crash in the Lorain Harbor. The boat was owned by Frederick C. Rowe but, at the time of the crash, was being operated by Mr. Lawson. Mr. Lawson's operation of the boat was for pleasure rather than for any business-related purpose. As a result of her injuries, Mrs. Lawson filed two separate lawsuits against a number of parties. Mr. Lawson was a co-plaintiff in one of those lawsuits. A counterclaim was filed against him in that lawsuit and a third-party complaint was filed against him in the other lawsuit. He tendered defense of the counterclaim and the third-party complaint to Ohio Casualty. Ohio Casualty provided a defense, but did so under a reservation of rights. On August 26, 1991, Ohio Casualty filed this action in the Lorain County Court of Common Pleas seeking a declaratory judgment

that it was not obligated to defend or indemnify Mr. Lawson for the claims made against him in the counterclaim or the third-party complaint.

To the extent that there is any confusion regarding Ohio Casualty's obligations under the insurance policy at issue in this case, that confusion arises from the insurance industry's practice of constructing policies by incorporating a number of forms, some of which include provisions never intended to be a part of the final policy. Although this practice is the antithesis of a process that would result in an unambiguous statement of the intended coverage, sometimes, perhaps through nothing more than luck, the resulting product cannot be termed ambiguous and, therefore, does not allow for application of rules of construction that would result in coverage desired by the policyholder. See, *e.g., Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88–89. In this case, the policy at issue is not ambiguous and does not require Ohio Casualty to provide a defense and indemnity for Mr. Lawson.

## II

In reviewing the granting of a motion for summary judgment, an appellate court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. An insurance policy is a written contract. "[C]onstruction of written contracts * * * is a matter of law." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. Paragraph one of the syllabus. The issue before this court, therefore, is whether the trial court correctly found that the insurance policy at issue was unambiguous and that Ohio Casualty was entitled to judgment in its favor as a matter of law.

Policy No. DDO 10188610 consisted of a cover sheet and eight attached forms. The attached forms were listed on the cover sheet and, thereby, incorporated into the policy in the order in which they were listed. Mr. Lawson's claim of coverage in this case was based upon certain provisions of an earlier listed form that were changed or deleted by a later listed form.

The cover sheet of the policy showed the insureds as "David M. and Dianne Lawson." The second form listed on the cover sheet, Form "CPL–1," included a definition of "insured" that provided that " 'insured' means you" and certain other individuals. That Form "CPL–1" contemplated some liability coverage in connection with watercraft was evidenced by the fact that certain people operating watercraft owned by "you," so long as the watercraft were not being operated "in the course of any business, or without the permission of the owner," were included within the definition of insureds.

Form "CPL–1" also included certain exclusions from liability coverage, including one for business pursuits:

"1.  Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to bodily injury or property damage:

" * * *

"b.  arising out of business pursuits of an insured * * *."

That Form "CPL–1" contemplated some liability coverage for watercraft was further evidenced by Section "e" of the exclusions from liability coverage. Section "e" provided there was no liability coverage for bodily injury or property damage:

"e.  arising out of the ownership, maintenance, use, loading or unloading of:

" * * *

"(3) a watercraft:

"(a) owned by or rented to any insured if the watercraft has inboard-outdrive motor power of more than 50 horsepower or is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;  or

"(b) powered by one or more outboard motors with more than 25 total horsepower, owned by any insured at the inception of this policy.  If you report in writing to us within 45 days after acquisition, an intention to insure any outboard motors acquired prior to the policy period, coverage will apply."

The above-quoted provisions lead us to the conclusion that among the coverage provided by Form "CPL–1" and not excluded in that Form was liability coverage for a named insured when the named insured was operating a watercraft owned by someone else and was doing so for pleasure rather than for business purposes. If Form "CPL–1" were the only relevant part of the policy at issue, therefore, that policy would have provided the coverage sought by Mr. Lawson.  Form "CPL–1," however, was not the only relevant part of the policy.

The last form listed on the cover page of the policy was Form "DF–2284." Form "DF–2284" included the following warning in large print at its top:

"THIS ENDORSEMENT CHANGES THE POLICY.

"PLEASE READ IT CAREFULLY.

"PROPERTY RENTED TO OTHERS LIABILITY COVERAGE ENDORSEMENT."

The effect of Form "DF–2284" was, among other things, to render the provisions quoted above from Form "CPL–1" nullities.

To begin with, Form "DF–2284" changed the definition of insured for liability coverage:

"For the premium charged, DEFINITIONS 3. 'Insured' * * * of Coverage L—Personal Liability and Coverage M—Medical Payments to Others are deleted and replaced by:

"3.   Insured

"If you are shown in the schedule of this endorsement as:

"a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are sole owner."

While Form "CPL–1" excluded all coverage for business activity, pursuant to Form "DF–2284," coverage was only provided for business activity.   (Further, the business activity for which that coverage was provided had to be in connection with the conduct of a business of which the insureds were the sole owners.)

Form "DF–2284" further narrowed the coverage of the policy by replacing exclusion 1.b., which was quoted above from Form "CPL–1" and which had excluded all coverage for business pursuits.   Pursuant to the replacement, all coverage for business pursuits, with one exception, was excluded from coverage:

"1.b. is deleted and replaced by:

"1.b.   arising out of:

"(1) business pursuit of any insured;  or

"(2) the rental or holding for rental of part of any premises by an insured.

"This exclusion does not apply to the rental or holding for rental of the insured location."

To recap, although Form "CPL–1" provided coverage only for nonbusiness-related activities, Form "DF–2284" changed that by a statement that the policy provided coverage only for certain business activity of the insured.   It then contained an exclusion for coverage of all business activity.   (Had the policy ended here, it would have provided no liability coverage whatsoever.)   Finally, it provided an exception to the exclusion in relationship to the "insured location" (752 Infirmary Road).   By this tortured path, Ohio Casualty arrived at the same meaning that could have been accomplished by a statement that:  "Liability coverage is provided to the named insureds for claims arising out of their rental of the property located at 752 Infirmary Road."

Form "DF–2284" also deleted exclusion 1.e.(3), which was quoted above from Form "CPL–1" and which excluded certain liability coverage related to some watercraft:

"1.e.(3) is deleted and replaced by:

"1.e.(3) a watercraft."

The final form of the exclusion related to watercraft, therefore, was:

"1.   Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to bodily injury or property damage:

" * * *

"e.   arising out of the ownership, maintenance, use, loading or unloading of:

" * * *

"(3) a watercraft."

Accordingly, the final effect of the various provisions of Policy Number DDO 10188610 dealing with watercraft was: "Liability coverage is not provided for anything related to watercraft."

## III

Policy No. DDO 10188610 included a number of provisions.   It was clear from the face of the policy, however, that those provisions were never intended to be part of the final policy.   The trial court, therefore, correctly found that the policy was not ambiguous and did not provide coverage for the claims made against Mr. Lawson in the counterclaim and the cross-claim for which he sought coverage. Accordingly, the trial court did not err when it granted Ohio Casualty's motion for summary judgment.   Defendant's assignment of error is overruled.   The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.