{¶ 1} This timely appeal comes for consideration upon the parties' briefs and the record in the trial court. Appellant Dr. Margaret Louise Spence, a former school administrator, appeals the decision of the Carroll County Court of Common Pleas granting summary judgment in favor of Appellee Michael Maiorca, the school superintendent. More specifically, Spence challenges the trial court's decision to summarily dismiss her three claims of promissory estoppel, fraud, and emotional distress.
 {¶ 2} The issues we must decide regarding Spence's promissory estoppel claim are 1) whether Maiorca unambiguously promised Spence he would recommend to the board of education that her contract be renewed and 2) whether Spence both foreseeably and reasonably relied upon that promise. Because we conclude Maiorca's promise to recommend Spence was conditional and that it was unjustifiable for her to rely upon that promise as a matter of law, we affirm the decision of the trial court with regard to that claim.
 {¶ 3} With regard to her claim of fraud, we must similarly determine whether Maiorca intended for Spence to rely upon his promise with the knowledge of its falsity. We conclude Spence has failed to allege facts which would indicate the promise, at the time it was made, was in fact false. Thus, we affirm the trial court's decision to grant summary judgment with respect to her claim of fraud.
 {¶ 4} Finally, Spence presents a claim of intentional infliction of emotional distress. In this context, we are asked to decide whether Maiorca intended to and in fact caused severe emotional distress through extreme and outrageous conduct. Because we conclude that, as a matter of law, he did not, we affirm the decision of the trial court granting summary judgment on this third and final claim.
 {¶ 5} Because this appeal arises from a summary judgment, the facts, most of which are undisputed, are framed in a light most favorable to Spence. In 1996, Spence began working for the Carrollton Exempted Village School District under a one-year employment contract. The employment contract was subsequently renewed by the Board of Education for another one-year contract for the 1997-98 school year, and then again as a two-year contract covering the 1998-1999 and 1999-2000 school years. Significantly, sometime after Spence was given the two-year contract renewal, Maiorca, the superintendent, informed Spence that although the Board initially wanted to give her a three-year contract he was not willing to do so, nor was he willing to recommend a one-year. However, a compromise with the Board resulted in the two-year renewal which was actually give to Spence. Maiorca further explained that his original intention to non-renew was based on his concerns regarding her performance and the expectation she would seek employment elsewhere. Subsequent to this conversation, Maiorca sent Spence a letter addressing his concerns regarding her problem areas along with guidelines to aid her improvement. None of these facts are in dispute.
 {¶ 6} The next encounter between Spence and Maiorca, which is at the very heart of this appeal, occurred in August of 1999. Spence claims she met with Maiorca to discuss her upcoming contract renewal. According to Spence, she requested Maiorca recommend to the Board of Education that she be given a five-year contract. Spence advised Maiorca she had been offered a position in New Philadelphia that would last for five years. In response, Spence claims Maiorca stated he would not and could not recommend her for a five-year contract but then promised he would recommend her for a three-year contract. In reliance on this statement, Spence claims she then declined the other offer. In contrast, Maiorca claims he advised he could give Spence a three-year contract but never promised to do so.
 {¶ 7} In November of 1999, Maiorca received a complaint from the Ohio Education Association regarding Spence's inappropriate behavior alleging, among other things, unfair labor practices. Soon after the receipt of this complaint, Maiorca forwarded a copy to Spence and informed her that she was now under investigation. On January 12, 2000, Maiorca advised Spence he would not be recommending to the Board of Education that she be renewed. At its February 8, 2000 meeting, the Board of Education voted to non-renew Spence's contract by a 3-2 vote. Again, none of these facts are in dispute.
 {¶ 8} Subsequent to the vote, Spence filed suit against Maiorca, as both superintendent and in his individual capacity, sounding in promissory estoppel, fraud, and intentional infliction of emotional distress. Maiorca moved for summary judgment on all three claims which the trial court granted without explanation.
 {¶ 9} As her sole assignment of error, Spence asserts,
{¶ 10} "The Trial Court erred in granting summary judgment in favor of Defendants-Appellees, thereby dismissing Plaintiff-Appellant's causes of action."
 {¶ 11} When reviewing a trial court's order granting summary judgment, we apply the same standard used by the trial court, Parenti v.Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829 and our standard of review is de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388,390. Pursuant to Civ.R. 56, summary judgment is proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, no genuine issue as to any material fact remains to be litigated, and the moving party is entitled to judgment as a matter of law, as reasonable minds can reach one conclusion, which is adverse to the nonmovant. Id.
 {¶ 12} As Spence filed three separate causes of action against Maiorca, we will address each in turn, beginning with her claim of promissory estoppel. Spence asserts there are remaining genuine issues of material fact with regard to the promise made to her by Maiorca with respect to her continued employment. We disagree. Assuming all her allegations regarding the promise made by Maiorca are true, Spence's claim fails as a matter of law.
 {¶ 13} In order to prove a case of promissory estoppel Spence must show: (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and, (4) injury caused by the reliance. Weiper v. W.A.Hill Assoc. (1995), 104 Ohio App.3d 250, 661 N.E.2d 796. Thus, the question we must answer is whether or not it was reasonable for Spence to rely on Maiorca's limited promise to recommend her to the Board when deciding to forego other career opportunities.
 {¶ 14} In analyzing this question, it is helpful to first examine the statutory framework for the renewal of school district employment contracts. In the context of the employment of administrators, R.C.3319.02(C) provides the board of education shall execute a written contract of employment with each administrator it employs. This section of the statute also indicates administrators shall only be re-employed in accordance with a recommendation for renewal by the superintendent, except that a board of education, by a three-fourths vote of its full membership, may renew any administrator's contract whom the superintendent recommended the board not renew.
 {¶ 15} R.C. 3319.02(D) further provides the board shall adopt procedures to evaluate administrative employees, which shall be considered by the board in deciding whether to renew the contract. The statute goes on to specify the requirements for the evaluation procedures include an annual written evaluation by the superintendent of the administrator's effectiveness in performing the duties. Significantly, the statute also says that:
 {¶ 16} "[t]he establishment of an evaluation procedure shall not create an expectancy of continued employment. Nothing in this section shall prevent a board from making the final determination regarding the renewal of or failure to renew the contract of any assistant superintendent, principal, assistant principal, or other administrator."
 {¶ 17} As such, public school employees are inherently different from "at-will" employees because their employment is governed by statute and by written contracts.
 {¶ 18} In light of the applicable statutory language, it appears Maiorca's promise to Spence, if carried out, would have increased her opportunity for contract renewal. Because this is a review of a summary judgment, we construe the facts in Spence's favor. Further, because Maiorca offered no evidence to the contrary, rather stating he merely could not recall making that promise, we presume he did make that promise to Spence. However, because the Board retains the authority to veto his recommendation, Maiorca's actions alone could not guarantee Spence's renewal, nor does it rise to the level of a genuine issue of fact.
 {¶ 19} However, our analysis does not end here. Although Spence's reliance could arguably be justified based on the weight Maiorca's recommendation carries with the Board, we determine Spence's reliance on Maiorca's promise to be unjustified for other reasons. Because we conclude the uncontroverted circumstances surrounding Maiorca's promise are dispositive of this issue, we look to what happened both prior to and after the promise was made. Due to the responsibilities of his position, Maiorca was responsible for evaluating Spence's progress throughout the year. Accordingly, in Maiorca's motion for summary judgment, he argued, with respect to any promise he may have made, he had the right to change his mind. He then points to Spence's deposition where she admits the promise was conditional.
 {¶ 20} "Q: You would agree there are things that could happen that would warrant him changing his mind if that's what he offered to you?
 {¶ 21} "A: Right."
 {¶ 22} Thus, there is no dispute between the parties that Maiorca's promise was conditioned upon what might transpire over the course of several months. Significantly, after Maiorca made the promise to Spence regarding the recommendation of her renewal, Maiorca received the complaint from the OEA alleging, among other things, unfair labor practices committed by Spence. In response to the complaint, Maiorca sent a letter to Spence stating, "Due to the seriousness of these allegations, I intend to conduct a full investigation that will include interviews with the teachers involved, other administrators and educational aides." Along with this letter, Maiorca attached a copy of the OEA complaint that warned Maiorca that Spence's behavior "exposes thedistrict to possible heavy liability." The complaint, which Spence admits in her deposition she received, further stated,
 {¶ 23} "Be advised that the Association is prepared to take any contractual or legal measures to secure safe, educationally sound classrooms for the students and staff. To that end, be it known that the Carrolton Education Association demands that the Carrolton Board of Education cease and desist the aforementioned practices."
 {¶ 24} At this point, especially in light of her knowledge of Maiorca's concerns regarding her performance during her entire employment history with the district, which, again, she admitted to in her deposition, Spence's reliance on Maiorca's promise was no longer justified as a matter of law. Spence should have realized her job was in jeopardy when Maiorca told her she was being investigated for alleged unfair labor practices. She had been accused of serious allegations by the OEA and was now being investigated by Maiorca and others. The OEA complaint placed Spence on notice the conditional promise might not be kept by Maiorca. As Spence admitted in the deposition, the promise was not unconditional. We conclude under these particular facts, a reasonable fact-finder could come to but one conclusion; Spence's reliance was unreasonable. Because there exists no genuine issues of material fact, we hold the trial court properly granted summary judgment on Spence's claim for promissory estoppel as a matter of law.
 {¶ 25} Closely related to her claim of promissory estoppel, Spence claims Maiorca fraudulently misrepresented to her that he would recommend her for renewal. The elements of fraud include: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and, (6) a resulting injury proximately caused by the reliance. Burr v. Board of County Commrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 26} Spence's claim for fraud fails for much the same reason as her claim for promissory estoppel. More specifically, when applying the law to these particular facts, a reasonable fact-finder could come to but one conclusion. Spence's averments when taken as true do not support a claim of fraud against Maiorca. Maiorca may have indeed made a promise to recommend Spence to the Board, but Spence has failed to allege facts a reasonable fact-finder would conclude demonstrate the falsity of Maiorca's promise.
 {¶ 27} Spence maintains Maiorca was aware his representation was false at the time he made the statement and never had any intention of keeping that promise. In the only piece of evidence Spence offers in support of this contention, Spence references a portion of her deposition where she states:
 {¶ 28} "Okay. He handed me this paper and I read it. At the end of our conversation, he said this is — I said so what are you going to do Mike? He handed me this paper. And I said to him, you know, this would have been a lot easier if you would have told me to take the job in ECHO SERRC. He said I knew this was probable and laughed. * * * He said to me when he handed me this paper, a non-renewal. I said to him, wouldn't this have been easier if you let me go to ECHO SERRC? He said, I knew this was possible; I knew this was possible and laughed and now I know."
 {¶ 29} Specifically, this occurred when Maiorca met with Spence to advise her he was making a recommendation of non-renewal. Even when these comments are construed in a light most favorable to Spence, no reasonable person could find that Maiorca intended to mislead Spence based solely upon those statements which are taken greatly out of context. More precisely, Spence is referencing a conversation with Maiorca that occurred well after he received the OEA complaint. This statement fails to prove Maiorca intended to mislead her at the time of the promise. Accordingly, we conclude Spence's claim fails in this respect. She simply has presented no evidence which could support a claim of fraud and consequently failed to demonstrate the existence of any genuine issue of material fact. Thus, we conclude the trial court properly granted summary judgment on Spence's fraud claim as a matter of law.
 {¶ 30} Finally, Spence claims Maiorca's actions support her claim of intentional infliction of emotional distress. The elements of intentional infliction of emotional distress are intentionally or recklessly causing severe emotional distress through extreme and outrageous conduct. Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369 at 374, 453 N.E.2d 666. The Supreme Court in Yeager described what constitutes extreme and outrageous conduct:
 {¶ 31} "It has not been enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' * * * The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. ` Id. at 375.
 {¶ 32} Spence claims Maiorca intended to cause her mental anguish by failing to tell her to move on with her life and take the other career opportunity when she had the chance to do so. She further explains that she considers Maiorca's failure to discuss her evaluation with her before it was presented to the Board to be outrageous. However, even when we solely take into account Spence's version of the facts and place them in a light most favorable to her, we conclude Maiorca was merely performing the dictates of his position.
 {¶ 33} It is well settled that conduct that might otherwise be extreme and outrageous, and thus actionable upon a claim for intentional infliction of emotional distress, is privileged when a party "* * * has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." (See Foster v. McDevitt (1986), 31 Ohio App.3d 237,511 N.E.2d 403 citing 1 Restatement of the Law 2d, Torts (1965) 76, Section 46, Comment g.)
 {¶ 34} In the present case, even when we view the facts in a light most favorable to Spence, we find as a matter of law, Maiorca merely exercised his statutory duty to the Board to make recommendations with regard to an employee's renewal or non-renewal. Because Spence does not claim the manner in which she was discharged caused her any emotional distress, there remain no genuine issues of material fact. We therefore conclude, Spence may not recover damages from Maiorca for the alleged infliction of emotional distress caused by her non-renewal, regardless of the severity of the distress and regardless of whether Maiorca intended or reasonably should have anticipated that result. Foster, supra. See also Ekunsuni v. Cincinnati Restoration, Inc. (1997), 120 Ohio App.3d 557,698 N.E.2d 503, Simonelli v. Anderson Concrete, Co. (1994),99 Ohio App.3d 254, 650 N.E.2d 488. We therefore hold with respect to her final claim that reasonable minds can come to only one conclusion, and that conclusion is that summary judgment should be granted as a matter of law.
 {¶ 35} For the foregoing reasons, Appellant's sole assignment of error is meritless, and the decision of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.