OPINION
{¶ 1} Plaintiff-appellant Robert Ross appeals a summary judgment of the Court of Common Pleas of Muskingum County, Ohio, entered in favor of defendant-appellee Individual Assurance Company, John Doe Insurance Company(s) and John/Jane Doe(s). Appellant assigns three errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT COMMITTED PREJUDICIAL (sic) ERROR BY CONSIDERING EVIDENCE IN SUPPORT OF APPELLEE'S MOTION FOR SUMMARY JUDGMENT THAT DID NOT CONFORM TO CIV. R. 56 (C).
 {¶ 3} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY CONSIDERING AN AFFIRMATIVE DEFENSE THAT WAS RAISED FOR THE FIRST TIME BY APPELLEE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.
 {¶ 4} THE TRIAL COURT FURTHER COMMITTED PREJUDICIAL ERROR BY NOT GRANTING APPELLANT'S MOTION FOR AN EXTENSION OF TIME TO RESPOND TO APPELLEE'S AFFIRMATIVE DEFENSE, WHICH WAS RAISED FOR THE FIRST TIME IN APPELLEE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.
 {¶ 5} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 6} Appellee has not filed an answer brief. Pursuant to App. R. 18 (C), this court may accept the appellant's statement of facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to support a reversal. For the following reasons, we find it does not support reversing the judgment. *Page 3 
 {¶ 7} On September 12, 2002, decedent Ruth L. Ross borrowed $12,090.00 from Century National Bank to purchase a mobile home under a credit installment contract. Appellant, decedent's son, was a guarantor and co-signer of the note. Decedent applied for credit life insurance. The insurance application was one page long and asked three questions: "(1) Have you ever received or been advised to receive medical advice, diagnosis or treatment for cancer, diabetes, stroke, nervous disorder or any condition of the heart, arteries, brain, liver, kidneys or lungs? (2) Have you consulted a physician in the past three years (except for routine physicals)? (3) Have you ever received or been advised to receive medical advice, diagnosis or treatment for HIV, AIDS, ARC or any other immunological disorder?"
 {¶ 8} If the answer to any of the questions was yes, the application asked for more information, including the name and address of any attending physician. Above the signature line the application stated: "I/We declare that the above statements and answers are complete and true to the best of my/our knowledge and belief. This agreement (or a photo copy) authorizes any physician or other person who has examined or treated me to give Individual Assurance Company any information so acquired." At the bottom of the document, in bold was printed "Any person who, with the intend to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."
 {¶ 9} Decedent checked "no" for all three medical questions. *Page 4 
 {¶ 10} On January 9, 2004, the decedent died and the loan was not yet paid in full. Appellant made an insurance claim, which appellee denied, alleging decedent committed a fraud in the application process by misrepresenting the state of her health.
 {¶ 11} Appellant filed suit, and appellee moved to dismiss, arguing appellant lacked standing. Appellant then amended his complaint, alleging he was the third party beneficiary of the contract. Appellant sued for breach of contract, breach of an implied covenant of fair dealing, bad faith, violation of the Ohio's Consumer's Sales Protection Act, and negligent and intentional infliction of emotional distress. Appellant also asked for a declaration of party's rights and responsibilities, and prayed for relief pursuant to doctrine of Quantum Meruit if the court found the contract was unenforceable.
 {¶ 12} Appellee moved for summary judgment, alleging decedent had committed fraud in answering the first two medical questions. Appellee attached sixteen exhibits to its motion for summary judgment, including copies of the application, decedent's medical records and death certificate, correspondence between the parties, an affidavit of the loan officer who was present when decedent completed the application, and an affidavit of appellee's claims manager. The claims manager stated if decedent had answered either or both of the first two questions yes, appellee would have requested additional information. Further, the claims manager stated if appellee had been given decedent's medical information it would have denied coverage.
 {¶ 13} Appellant filed a memorandum contra the motion for summary judgment, challenging, among other things, the authenticity of the applications, and the accuracy of the bank officer's affidavit. Appellant submitted his affidavit which asserted he was personally present when decedent signed the application. He alleged decedent was not *Page 5 
able to understand simple documents at the time she executed the documents, and would not have been able to understand the three medical questions. Appellant alleged his wife handled all decedent's financial transactions and he had power of attorney at the time she executed the documents. Appellant asserted decedent was not mentally competent to answer any of the questions on the application.
 {¶ 14} Appellant moved to strike the medical records and death certificate from appellee's motion for summary judgment because they were not properly authenticated. Appellant also objected to a sentence in appellee's motion for summary judgment saying "encephalopathy is a disease of the brain" and "Mrs. Ross was diagnosed with a basilar tip aneurysm" because appellee submitted this information without an opinion from any medical expert.
 {¶ 15} Appellee replied, stating appellant's affidavit brought to light new information of which appellee had been completely unaware. Appellee argued appellant's affidavit established decedent was incompetent to enter into the contract, and thus no contract ever existed. Appellee accepted appellant's affidavit without challenge, arguing he is the person who best knew his mother.
 {¶ 16} Appellant responded appellee's reading of his affidavit was overbroad, because he did not allege his mother was incompetent to enter into the contract, but only to understand the questions in the application. Appellant submitted a supplemental affidavit, explaining decedent was competent to understand the transaction at issue, i.e. she was borrowing money to purchase a mobile home and wanted to have credit life insurance on the loan. Appellant explained in his earlier affidavit, he only meant appellant would not have understood the questions about her medical condition or the *Page 6 
impact the questions had on the application for credit life insurance. Appellant also argued appellee had not raised the affirmative defense of incompetence in its answer, and was precluded from raising the defense for the first time on summary judgment.
 {¶ 17} The trial court entered summary judgment, finding no issue of material fact, and concluding appellee was entitled to judgment as a matter of law.
 {¶ 18} Civ. R. 56 states in pertinent part:
 {¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 20} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts,Houndshell v. American States Insurance Company (1981),67 Ohio St. 2d 427. The court may not resolve ambiguities in the evidence presented,Inland *Page 7 Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St. 3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v. InterimPersonnel, Inc. (1999), 135 Ohio App. 3d 301.
 {¶ 21} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, Parenti v. Goodyear Tire RubberCo. (1990), 66 Ohio App. 3d 826.
 {¶ 22} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St. 3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v.Henkle (1991), 75 Ohio App. 3d 732.
 {¶ 23} Appellant has failed to comply with Loc. App. R. 9 regarding appeals from summary judgments, and has not set out the specific facts he claims were material and genuinely disputed.
 I. {¶ 24} In his first assignment of error, appellant argues the court erred by considering documents that did not conform to Civ. R. 56(C). We find the record does not demonstrate the court based its decision on any of the documents appellee *Page 8 
submitted in support of its allegation of fraud. Appellee conceded decedent was incompetent and unable to commit fraud. Any irregularity in the documents appellee presented is moot.
 {¶ 25} The first assignment of error is overruled.
 II. {¶ 26} In his second assignment of error, appellant argues the trial court should not have considered the affirmative defense of incompetence raised for the first time in appellee's reply to appellant's memorandum contra the motion for summary judgment. Appellant also argues the court should have granted an extension of time for him to respond to this defense.
 {¶ 27} We find appellant's argument is specious. Appellant raised the issue of decedent's competency to defend against charges of fraud, and cannot challenge appellee's use of the same information. Appellant argues prejudice may be found when a defendant asserts defenses at a time the plaintiff cannot adequately prepare to litigate them, but we find he cannot claim he was unprepared to litigate an issue he raised.
 {¶ 28} The second assignment of error is overruled.
 III. {¶ 29} In his third assignment of error, appellant argues the court should not have granted appellee's motion for summary judgment, given the improper evidence and the improper affirmative defense.
 {¶ 30} Appellant's supplemental affidavit asserts when he alleged decedent was unable to understand simple documents at the time she executed the contract, he did not mean she was incompetent to understand the agreement. To the contrary, *Page 9 
appellant alleged decedent had the mental capacity to enter into the agreement although she could not understand the questions regarding her medical condition, and the "impact those questions had over the contract".
 {¶ 31} The essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of the object of the contract and of the consideration. A meeting of the minds is an essential term of the contract and a requirement to enforce the contract, Kostelnik v.Helper, 96 Ohio St. 3d 1, 2002-Ohio-2985, 770 N.E. 2d 58 at paragraph 16, citations deleted.
 {¶ 32} We have reviewed the application for credit life insurance decedent executed. It asks for decedent's name and address, her date of birth and Social Security number, and the kind of insurance for which she is applying. Other than those questions, the only questions on the application are the three referring to medical issues. The questions are unambiguous and couched in layman's language. The application warned decedent giving false answers constituted insurance fraud. Appellant's affidavit alleges in effect decedent was unable to understand virtually the entire application. We find if decedent could not understand any of these phrases, or could not grasp why an insurance company would ask about her health before issuing a life insurance policy, then she was unable to understand the essence of the contract she was signing.
 {¶ 33} We find the trial court did not err in entering summary judgment in favor of appellee.
 {¶ 34} The third assignment of error is overruled. *Page 10 
 {¶ 35} For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
By Gwin, P.J.,
Hoffman, J., and
Wise, J., concur
_________________________
HON. W. SCOTT GWIN
__________________________
HON. WILLIAM B. HOFFMAN
__________________________
 HON. JOHN W. WISE *Page 11 
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed. Costs to appellant.